Mr. and Mrs. Walter R. Terry had been living in the same community with plaintiff and his relatives for some two or three years, and they were fairly well acquainted with them, although it seems that the fact that the Terrys were English speaking people and the plaintiff and his relatives were French speaking people caused a lack of thorough understanding between them.
On February 4, 1938, the Terrys moved from this community located near the Bosco Oil Field to the City of Lafayette and secured the services of plaintiff, who operated his father's truck, to move their furniture and household effects. The Terrys loaded certain articles, such as dishes and a radio, in their car, after which the truck was loaded by the plaintiff and Mr. Babineaux, his uncle, with the assistance of Mr. Terry. After all the household goods were loaded in the truck, plaintiff expressed the desire to go to his home, about a half mile away, for the purpose of changing his clothes, which were wet and dirty, before proceeding to Lafayette with the furniture in the truck. The defendant thereupon suggested that it would be more convenient for plaintiff to use the car than the truck, and offered the plaintiff his car for the purpose of going home to change his clothes. Plaintiff accepted this offer and accordingly left in the car and returned about a half hour later, being in full view of the Terrys and his aunt, Mrs. Babineaux, during the whole trip, except for a period of four or five minutes on his return when he was hidden from view by a building between the road on which he was traveling and the place where the Terrys were sitting or standing.
According to the testimony of both Mr. and Mrs. Terry, as they were about to place the tub of dishes in their automobile, Mrs. Terry removed her diamond ring and a wedding ring from her finger, wrapped them in a paper napkin, placed them in her purse, and then placed the purse in the glove compartment of the car, so that she could assist her husband in placing the tub of dishes in the car without injury to the rings. It appears that when young Richard returned with the car, he and Mr. Terry and Mr. Babineaux got into the truck and that Mrs. Terry and Mrs. Babineaux got into the automobile. Mrs. Terry testifies that upon entering the automobile she opened the glove compartment for the purpose of getting her purse to place in it $4.50, which she had received for a stove which she sold just before leaving, and that at the time she noticed from the position of the purse that it had been moved. She states that on opening the purse she failed to see the diamond ring, but that she did not investigate further at that time, because of the presence of Mrs. Babineaux, but merely inserted the $4.50 and replaced the purse in the compartment.
She and Mrs. Babineaux then proceeded to her new home in Lafayette and parked the car along a driveway towards the rear of the house. Shortly thereafter the truck arrived and the three men, namely Mr. Terry, the plaintiff, and Mr. Babineaux proceeded to unload the truck and the car, and *Page 180 
Mrs. Babineaux and Mrs. Terry were occupied in placing the furniture and straightening out the house. After the furniture was unloaded, it appears that the plaintiff and his uncle went to town in the truck, with the understanding that they would pick up Mrs. Babineaux later in the afternoon and that she would remain with Mrs. Terry to assist her in finishing the placing of the furniture and in cleaning and straightening out the house.
It appears that after plaintiff had left, Mrs. Terry found a chance to withdraw to a room where she was alone, at which time she made a complete search of her purse and confirmed her suspicion that the diamond ring was missing. It appears further that her husband was at that time about to proceed to town with the apparent purpose of arranging to have electricity and other utilities connected to the house, and Mrs. Terry then decided to accompany her husband, and after she entered the car with him, she informed him of the missing diamond ring.
It is apparent that in view of the circumstances, particularly that in their opinion the ring had been placed in the purse and that the purse had been within the control of only the plaintiff from the time that it was placed in the car until the time that Mrs. Terry made a search of it, they became convinced in their minds that young Richard had taken the diamond ring. After discussing the matter between them, they reached the conclusion that the proper procedure in the circumstances was for them to consult the law enforcement officials, or, as they expressed it, to "see the law". Accordingly, Mr. Terry called on the Chief of Police at Lafayette, who informed him that the matter came under the jurisdiction of St. Landry Parish, and who advised him to make a charge in that parish, and the Chief of Police of Lafayette thereupon telephoned the Chief of Police of Opelousas and asked him to be on the lookout for the diamond ring. The defendant also testified that he went to see an attorney in Lafayette to whom he related the circumstances and that this attorney advised him to make a charge against the plaintiff.
Following the advice received from the Chief of Police and from his attorney, Mr. Terry made a charge against the plaintiff on February 8th, and as a result of the charge the plaintiff was arrested and placed in jail and released shortly thereafter on bond. Later the charge was presented to the Grand Jury of St. Landry Parish, which returned a finding of "No true bill" on June 13, 1938.
On the following December 5th the plaintiff filed the present action against the defendant for damages in the sum of $1,950 alleging malicious prosecution.
The trial judge rendered a judgment dismissing the suit of plaintiff on the ground that the defendant had probable cause and acted without malice in making the charge. The plaintiff has appealed.
From a review of the circumstances surrounding the charge made by defendant against the plaintiff, as set forth hereinabove, we are convinced that the defendant acted without malice, with advice of counsel, and with probable cause, and it is fundamental that under these circumstances they cannot be held for malicious prosecution. It is true that the situation set forth is the version of Mr. and Mrs. Terry, but the only important contradiction thereof is the testimony of plaintiff and his relatives to the effect that the purse was not under such control of plaintiff as to eliminate the possibility that the ring was removed by someone besides plaintiff; but it is admitted that plaintiff did use the Terry car as set forth and that the purse was in the glove compartment, and it is not contradicted that the defendants did consult law enforcement officers and an attorney at law and acted on their advice. It is also true that defendant may have acted without proper tact and that if he had given the matter more thought and investigation he may never have made the charge; but we are convinced that the Terrys used their best judgment under the circumstances, and that their lack of tact, if there was any, is probably attributable to their failure to fully understand these French speaking people. It is noted that in their answer they admit that young Richard enjoys a good reputation and that he has never been in trouble of any kind and was never arrested for any offence. Had the defendant herein ascertained those facts before making his charge, possibly the charge would not have been made, but his failure to do so does not mean that he acted through malice or without probable cause.
In view of these considerations, the judgment is affirmed. *Page 181